# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE FELIX,<br><br>　　　　　Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA, ET. AL.,<br><br>　　　　　Defendant. | CASE NO. 08CV0660<br>　　　　　　06CR1948 BTM<br><br>ORDER RE: 2241 PETITION |

Petitioner Guadalupe Felix moves for relief pursuant to 28 U.S.C. § 2241 on the ground that the Bureau of Prisons ("BOP") miscalculated the credit against his sentence. Felix argues that he is, thus, being held in custody after expiration of his sentence.[1]

**FACTUAL BACKGROUND**

The following facts are taken from the court record and the evidentiary hearing conducted on September 29, 2008. On October 29, 2005, Felix was arrested for assaulting a border patrol agent. Because he was shot several times while attempting to flee, he was taken to Loma Linda hospital for treatment. A complaint was filed against him in federal court on November 1, 2005 in case number 05CR2200 (JAH).

On November 11, 2005, FBI agent Carla Croft and her partners took custody of Felix upon release from the hospital and transported him to Imperial County Jail ("ICJ"). Felix had

---

[1] Although Felix initially sought alternative relief for ineffective assistance of counsel pursuant to 28 U.S.C. § 2255, he has withdrawn his claim on that ground.

been in custody of the Border Patrol while in the hospital. ICJ refused to admit Felix because they did not have the medical facilities necessary to continue to care for Felix's condition. Agent Croft also made attempts to book Felix at two additional institutions on the federal charges pending against him but these institutions declined to take him.

Agent Croft, who was aware that Felix had also violated his state parole by his actions on October 29, 2005, attempted to get Felix booked into Donovan State Prison. A lieutenant at ICJ contacted Mike Bell, a state parole officer and informed him of the situation. Parole officer Bell arrived at ICJ and handed Agent Croft a packet containing paperwork which would enable Agent Croft to book Felix at Donovan on state parole violation charges. Agent Croft transported Felix to Donovan and handed the packet to the intake division of Donovan. Felix was admitted to Donovan on his parole violation charges. According to Felix, he entered an optional waiver on November 30, 2005 and did not contest the parole revocation allegations. (Petition, p. 2) According to the terms of this waiver, Felix could later return to the Parole Commission, vacate the revocation and contest the allegations within 15 days after conclusion of the related federal proceedings. See Cal. Code Regs., tit. 15, § 2641(b). According to the Presentence Report in 06CR1948, the Parole Commission sentenced Felix to "12 months custody which was to run concurrent to his time in federal custody on the present matter as of the violation date." Due to his medical condition, Donovan officials took him to Alvarado Hospital and held him in state custody during this stay at the hospital.

Agent Croft left Felix in state custody at Donovan without placing any conditions on, or even discussing, Felix's availability for federal proceedings. Unless these state parole violation charges existed, Agent Croft would not have been able to place Felix in Donovan. Within the next few days, Agent Croft advised the federal marshals and prosecutors that Felix was in custody at Donovan.

On November 16, 2005, a status hearing in Felix's case was held in federal court.[2]

---

[2] At previous hearings held before November 11, 2005, the government had informed the court that Felix was held at Loma Linda hospital in federal custody.

John Weis, an AUSA, appeared on behalf of the government and explained that Agent Croft had placed Felix at Donovan State Prison and that the state prison had accepted him as a parole violator. (See Transcript of 11/16/2005 Hearing, p. 1-3) Mr. Weis further stated to the court that because Felix was booked at Donovan on state charges, the federal government no longer had custody or any type of "hold" over Felix and that a writ of habeas corpus would be necessary to obtain his presence for federal proceedings. (Id.)

On November 29, 2005, Magistrate Judge McCurine issued a writ of habeas corpus to Donovan for Felix to appear on November 30, 2005 and for any further proceedings. Felix did not appear on this date but his counsel appeared on his behalf and discussed the fact that he was in state custody at Alvarado Hospital. (Transcript, November 30, 2005 hearing, pp. 3-4). Felix first appeared before the federal court the next day on December 1, 2005. On December 7, 2005, Felix was indicted for various crimes in federal court in case 05CR2200, which was assigned to Judge Houston. On September 1, 2006, Felix was also indicted on additional crimes unrelated to the October 29, 2005 events in case number 06CR1948, which was assigned to Judge Moskowitz. Felix remained in continuous federal custody pending prosecution in the above cases. On November 11, 2006, while still in federal custody, he was paroled from the one-year parole violation term issued by state authorities. The U.S. Marshall's prisoner tracking system records indicate that the state released Felix into federal custody on this date.

On March 9, 2007, Felix was sentenced by Judge Houston in case 05CR2200 to a 1-year term of imprisonment followed by one year of supervised release. Felix argues that he did not at this time seek to vacate his parole revocation term because he believed that he had already served the one year parole term and Judge Houston's one year sentence concurrently during his pre-sentence custody. On July 5, 2007, Felix was sentenced before Judge Moskowitz to a 21-month term followed by one year supervised release. This second term was ordered to run consecutive to the sentence imposed by Judge Houston.

The BOP computed Felix's sentence as commencing on March 9, 2007 (the date the

first sentence by Judge Houston was imposed) and combined the two sentences into a single aggregate term of one year and 21 months for administrative purposes. The BOP awarded credit for time spent in pre-sentence custody with the exception of the time period from November 11, 2005 to November 11, 2006. The BOP did not award credit for this one-year time period on the ground that this time had been credited toward the state parole sentence pursuant to 18 U.S.C. § 3585 which prohibits "double-counting" of sentences. Felix contends in his §2241 petition that the BOP miscalculated his sentence and erroneously denied him credit for one year pre-sentence time that he spent in federal custody.

On June 28, 2006, this Court released Felix on bail pending adjudication of the Petition. It did so on the ground that Felix has demonstrated some likelihood of success on the §2241 claim.[3] Felix subsequently violated the conditions of release and was remanded back into federal custody.

**DISCUSSION**

A.  Procedural Default and Failure to Exhaust

The government contends that the Court should not reach the merits of Felix's request for relief under § 2241 because Felix has procedurally defaulted his claims and also failed to exhaust his claims. First, the Court notes that the alleged miscalculation by the BOP had not occurred at the time of the original district court sentencing proceedings. Felix therefore could not have defaulted this claim by failing to object at the time of the district court proceedings. See United States v. Frady, 456 U.S. 152, 167-168 (1982) (petitioners cannot obtain relief based on trial errors to which no contemporaneous objection was made). Second, the government contends that Felix failed to exhaust his claims. Although exhaustion of administrative remedies is generally required before pursuing habeas relief, "[e]xhaustion is not required if pursuing those remedies would be futile." Fraley v. U.S.

---

[3] The Court found that Felix had a likelihood of success and released him on bail based upon its initial analysis that the government's actions in booking Felix at Donovan may constitute a violation of Federal Rule of Criminal Procedure 5. For the reasons set forth below, the Court has reconsidered its initial analysis.

4

08CV0660 BTM

Bureau of Prisons, 1 F.3d 924 (9th Cir. 1993).  Felix has attested that, prior to filing the instant petition for §2241 relief, he filed various "cop out" forms at the instruction of BOP staff.  On June 5, 2008, Felix received a response denying recalculation on the ground that his sentence had been correctly calculated. The government has taken the same position in opposition to Felix's request for relief under § 2241.  The Court therefore concludes that any further exhaustion efforts would be futile. The Court also takes into consideration that Felix, if his contentions are correct, has already served time in excess of his correct sentence. Given this situation, the Court will not require further exhaustion before reaching the merits of Felix's § 2241 petition.

B.  <u>Miscalculation of Sentence Pursuant to §2241</u>

Felix makes two arguments to support his contention that his sentence was miscalculated.  First, he argues that 18 U.S.C. §3585(b) which prohibits "double counting" of credit against two sentences only applies to federal sentences and not toward a state parole revocation term.  Second, Felix argues that because the federal government had custody of Mr. Felix, it must give him credit because the Parole Commission intended that his state term run concurrent with the time spent in federal custody. The Court disagrees for the following reasons.

1. *The "Double Credit" Provisions of 18 U.S.C. § 3585 Apply To Felix*

The BOP relied on 18 U.S.C. §3585(b) in not awarding the one year that Mr. Felix spent in pre-sentence custody.  §3585 provides:

> **(a) Commencement of sentence**.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> **(b) Credit for prior custody**.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

First, Felix argues that the term "sentence" as used on §3585 refers only to a federal sentence and not a state sentences. The BOP has interpreted § 3585(b) to mean that credit will not be given for any portion of "time spent serving another sentence regardless of whether the sentence is federal, state or foreign." See Rios v. Wiley, 201 F.3d 257, 275 (3rd Cir. 2000) (quoting Dept. of Justice, Bureau of Prisons' Program Statement No. 5880.28(c)(1)(a)(2) (Feb. 14, 1997)). According to Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), the BOP's interpretation is entitled to deference. The Court also notes that decisions from the Ninth Circuit have approved the denial of credit to a federal sentence on the ground that the prisoner has received credit for that time on a state sentence. See e.g, United States v. Von Willie, 59 F.3d 922, 930-931 (9th Cir. 1995) (time spent in federal custody on a federal writ should not be credited toward federal sentence because it was credited toward a state sentence); U.S. v. Savannah, 145 F.3d 1343 (9th Cir. 1998)(prisoner is not entitled to federal credit for time that was applied to his state sentence pursuant to § 3585).

The Court also rejects Petitioner's argument that a parole revocation term is not a sentence because a parole revocation term is pronounced by an administrative board rather than a court. Petitioner's only support for this proposition is a citation to Black's Law Dictionary which defines sentence as a judgment "formally pronounced by the court or judge." The Court concludes that this dictionary definition, intended to provide general information, is not a sufficient basis to interpret §3585 contrary to the BOP's interpretation. See Chevron, 467 U.S. 837. The Court therefore concludes that §3585 applies to Petitioner Felix's parole revocation term.

*2. The State Government Obtained Primary Jurisdiction Over Felix*

Second, the Court rejects Felix's argument that because the federal government had custody of Mr. Felix, it must give him credit for his "concurrent" state parole sentence. When a person has committed crimes against two sovereigns, the issue of which sovereign has primary jurisdiction can often have profound effects on how sentences are calculated. See,

e.g., Del Guzzi v. United States, 980 F.2d 1269 (9th Cir. 1992).  Primary jurisdiction is a term which refers to the "priority of custody and service of sentence between state and federal sovereigns" i.e. if the federal government has primary jurisdiction, a prisoner must first serve his federal sentence before serving his state sentence. Taylor v. Reno, 164 F.3d 440, 444 n.1 (9th Cir. 1998). Because priority of custody will also determine when sentences are deemed to commence, the Court must first resolve the question of primary jurisdiction before it can analyze sentence calculation.

> Determination of priority of custody and service of a sentence between state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns. Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration. However, the sovereign with priority of jurisdiction . . . may elect . . . to relinquish it to another sovereign. United States v. Warren, 610 F.2d 680, 684-685 (9th Cir. 1980).

Various courts have noted relinquishment of primary jurisdiction can occur in several ways, including release of the prisoner by one sovereign followed by arrest of the same prisoner by a different sovereign. See Taylor v. Reno, 164 F.3d 440, 444 (9th Cir. 1998) (federal government relinquished primary jurisdiction when it released prisoner and prisoner was arrested by state authorities).  The loss of physical custody or possession of the prisoner is the "primary component of every relinquishment of priority of jurisdiction." Floyd v. Berkebile, 2008 WL 153494, *2 (N. D. Tex. 2008); see Taylor, 164 F.3d at 445.  Relinquishment, however, does not occur when one sovereign borrows a prisoner from another sovereign through a writ of habeas corpus. Taylor, 164 F.3d at 445-46.

     Here, the federal government relinquished primary jurisdiction of Felix when it transferred him to state custody at Donovan and had him booked on state charges.  The federal government did not entrust Donovan to hold him on federal charges or leave him with state authorities under the condition that he remain available for federal proceedings. Rather, by booking him at Donovan on state charges without conditions, it released him from federal custody and allowed the state government to arrest Felix on the state charge of parole violation. As the government admitted at the status conference before the magistrate judge on November 16, 2005, the federal government lost custody and control over Felix and

would need a writ of habeas corpus to ensure Felix's presence for federal proceedings.

Felix argues that even if the federal government relinquished primary jurisdiction over him by placing him in Donovan, the state government ceded primary jurisdiction back to the federal government when it produced Felix on December 1, 2005 without a writ of habeas corpus. Felix points out that he was not produced on November 30, 2005 as required in the November 29, 2005 writ issued by the magistrate judge.  Felix argues that, as a result, his December 1, 2005 appearance in federal court was not pursuant to federal writ but rather a voluntary relinquishment on the state's part.  Although the docket does not indicate that this writ was executed, it appears likely that state authorities produced him pursuant to this writ on December 1, 2005, as soon as Felix was medically capable .  If Felix was produced according to the writ, then the state retained primary jurisdiction over him.  See Taylor, 164 F.3d at 445-46.   If the state did not produce him according to the writ, it is possible depending on the other factual circumstances of the state's release, that the state did relinquish primary jurisdiction over Felix.

*3. Felix Is Not Entitled To Credit For His "Concurrent" State Sentence*

Assuming that the state did not cede primary jurisdiction back to the federal government, the Court concludes that the BOP's calculation of Felix's sentence was correct. Because Felix remained in the primary custody of the state at the time his state parole revocation sentence was imposed, his parole revocation term started running immediately on November 11, 2005 and was completed on November 11, 2006. In accordance with 18 U.S.C. § 3585(b), the BOP correctly determined that this one-year time period could not be credited against Felix's federal sentence because it was already credited against his state parole revocation term.

Felix argues that, because the state parole commission imposed the sentence concurrent to his federal time, he should receive the credit against his federal sentence as well. This argument fails because the federal government did not obtain primary jurisdiction over Felix until November 11, 2006 when Felix completed serving his parole revocation and

Felix's federal sentence was not imposed until March 9, 2007. Felix, therefore, could not possibly serve the parole revocation term concurrently with his federal term because the state term had already expired by the time the federal term commenced.

Neither the state parole commission nor the district court has the authority to order that a federal sentence commence before the federal government obtains primary jurisdiction over the prisoner. See United States v. Warren, 610 F.2d 680, 685, n. 9 (9th Cir. 1980) (a district court's order crediting time spent in state custody is invalid because it effective began prisoner's sentence before he was delivered to federal authorities). The BOP therefore was not required to make the federal sentence concurrent to the previously imposed state revocation term because that would effectively commence Felix's sentence before the federal government gained primary jurisdiction over him. For the above reasons, the Court concludes that the BOP's sentence calculation was correct assuming that the state did not cede primary jurisdiction back to the federal government on December 1, 2005.

Assuming that the state relinquished primary jurisdiction back to the federal government, it may be that the sentencing calculation results would not be any different. Because the federal government initially relinquished federal jurisdiction over Felix on November 11, 2005, Felix had already begun serving his state parole sentence when the state government allegedly ceded primary jurisdiction to the federal government. Felix states in his Petition that he entered an "optional waiver" in his parole proceedings November 30, 2005. Therefore, at least from this date, if not earlier, Felix began officially serving his state parole time. Although primary jurisdiction determines priority of service of sentence between state and federal sovereigns, the Court notes that when a sentence with one sovereign has already commenced, a change in primary jurisdiction may not necessarily operate to interrupt that sentence. It appears that Felix completed his state sentence, was released from this sentence by state authorities and was credited for this sentence by the state, all prior to his federal sentence commencing on March 9, 2007. (Docket No. 130, Government's Response in Opposition, Attachment 5) Assuming that primary jurisdiction principles do not

dictate the interruption of a sentence that is already being served in favor of a sentence that has not yet been imposed, the Court concludes that §3585's prohibition against double counting still applies. Based on this chain of reasoning, the BOP's sentencing calculation would remain correct.

However, because both parties have not had a chance to provide factual evidence and legal briefing on (1) whether the state did in fact cede primary jurisdiction back to the federal government on December 1, 2005; and (2) the impact that a change in primary jurisdiction has on the priority of an ongoing sentence. The Court will allow additional briefing on the above two issues only. The parties shall file additional briefing by October 17, 2008 and shall appear for a hearing on this issue on October 20, 2008 at 9:00 a.m.

### 4. *Rule 5 Does Not Provide A Remedy*

In its initial analysis, the Court explored the possibility that Agent Croft's action of booking Felix in Donovan on a state charge when federal charges were pending against him constituted a violation of Federal Rule of Criminal Procedure 5, which mandates a prisoner's prompt appearance before a magistrate judge. Upon further analysis, the Court concludes that Rule 5 was designed to prevent police from using oppressive interrogation tactics and obtaining confessions during prolonged detentions before producing the prisoner before a judicial officer. See Mallory v. United States, 354 U.S. 449, 451-454 (1957). Even if Rule 5 could be stretched to require a remedy for situations where the federal government's relinquishment of primary jurisdiction before arraignment adversely affects a prisoner's opportunity for a concurrent sentence, the Court concludes that Felix has failed to show prejudice as a result of being booked at Donovan rather than being brought immediately before a federal magistrate. Felix argues that he was prejudiced because Croft relinquished federal primary jurisdiction causing Felix's state sentence to run prior to, rather than concurrent to, his federal sentence as envisioned by the state parole commission. However, as Felix himself stated in his Petition, he had the opportunity to contest and vacate his parole revocation term after Judge Houston imposed his federal sentence. See Cal. Code

Regs., tit. 15, § 2641(b). If Felix's parole sentence was vacated, he would have received pretrial credit from December 1, 2005 to November 11, 2006 because, during this time period, he would not have been serving a state parole sentence while in federal custody. He could have then asked the parole commission to resentence him to one year concurrent to his federal sentence. Thus, Felix had a remedy to avoid the situation in which he now finds himself. Since there was no actual prejudice by not taking Felix before the magistrate judge prior to booking him in Donovan, no remedy for an alleged Rule 5 violation is necessary.

For the reasons set forth above, the Court directs further briefing and sets a hearing for October 20, 2008 at 9:00 a.m. at which time the Court will take evidence on whether the state relinquished primary jurisdiction to the federal government on December 1, 2005 or whether Felix was produced pursuant to the writ of habeas corpus issued on November 29, 2005.

**IT IS SO ORDERED.**

DATED: October 6, 2008

*[signature]*

Honorable Barry Ted Moskowitz
United States District Judge